UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**TECHNIPLAS US LLC,**

    Plaintiff,

  v.                                               Case No. 21-CV-159

**DAVID KNILL,**

    Defendant.

---

## DECISION AND ORDER ON DEFENDANT'S MOTION TO DISMISS

---

Techniplas U.S., LLC sues its former Chief Financial Officer, David Knill, for breach of contract stemming from an alleged oral agreement entered into by the parties in 2020. Knill moves to dismiss Techniplas' complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Techniplas opposes the motion. For the reasons below, Knill's motion is granted and Techniplas' complaint is dismissed without prejudice. Techniplas will be granted leave to file an amended complaint consistent with this decision.

## BACKGROUND

Techniplas is a global provider of highly engineered plastic components, primarily for the automotive sector as well as industrial, consumer, medical, and other markets. (Compl. ¶ 8, Docket # 1-2.) In August 2015, Techniplas hired Knill as its CFO. (*Id.* ¶ 10.) Knill's responsibilities included, but were not limited to, accountability for the administrative, financial, and risk management operations of Techniplas; development of a financial and operational strategy, metrics tied to that strategy, and the ongoing

development and monitoring of control systems designed to preserve company assets; and reporting accurate financial results. (*Id.* ¶ 11.) Knill reported directly to the President of Techniplas. (*Id.*) As part of his employment, Techniplas provided Knill with a leased vehicle for his personal use, on which Techniplas made the monthly payments. (*Id.* ¶ 13.)

On May 7, 2020, Techniplas filed for Chapter 11 Bankruptcy. (*Id.* ¶ 14.) In June 2020, Knill submitted his resignation, with his final day of employment on July 15, 2020. (*Id.* ¶ 16.) After submitting his resignation, however, Knill contacted Techniplas' Chief Executive Officer with a proposal to provide assistance to Techniplas after his employment ended. (*Id.* ¶ 17.) The specific proposal Knill offered was to assist Techniplas after his employment ended in order to help the company manage the transition to a new CFO and to maintain consistency of reporting and information as it emerged from the bankruptcy process. (*Id.* ¶ 18.) In exchange for Knill's assistance, Techniplas agreed to continue to make the monthly lease payments on Knill's company vehicle through December 31, 2020, at which time, if Knill had provided the assistance promised, Techniplas would consider purchasing the vehicle and placing it in Knill's name. (*Id.* ¶ 19.)

Due to an internal communication error at Techniplas, rather than waiting until December 31, 2020, Techniplas purchased the company vehicle for $66,923.09 and placed the vehicle in Knill's name on July 30, 2020. (*Id.* ¶¶ 22–23.) Techniplas alleges that instead of providing the agreed upon assistance to Techniplas during the transition period, Knill instead used the time to solicit Techniplas employee Chris Mieska to leave Techniplas and joint Knill at Neenah Enterprises, Inc. (*Id.* ¶ 24.) Mieska was a highly valued Techniplas employee, essential to Techniplas' ability to transition through the bankruptcy and emerge to return to operational success. (*Id.* ¶¶ 25–27.) Techniplas alleges that Knill used his

continued connection to Techniplas, under the guise of the assistance agreement entered into with the CEO, as a means to solicit Mieska to leave Techniplas. (*Id.* ¶ 31.) Techniplas alleges that Knill's solicitation of Mieska was a "blatant breach of the Agreement to assist Techniplas." (*Id.* ¶ 32.) Upon learning of Knill's conduct and actions running afoul of the agreement, on September 23, 2020, Techniplas demanded return of the company vehicle, which Knill refused. (*Id.* ¶ 33.)

## APPLICABLE RULE

Knill moves to dismiss Techniplas' complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A short and plain statement "'gives[s] the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41 (1957)). In order to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

When determining the sufficiency of a complaint, the court should engage in a two-part analysis. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). First, the court must "accept the well-pleaded facts in the complaint as true" while separating out "legal conclusions and conclusory allegations merely reciting the elements of the claim." *Id.* (citing *Iqbal*, 556 U.S. at 680). Next, "[a]fter excising the allegations not entitled to the presumption [of truth], [the court must] determine whether the remaining factual allegations 'plausibly suggest an entitlement to relief.'" *Id.* (citing *Iqbal*, 556 U.S. at 681). As explained

in *Iqbal*, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 556 U.S. at 679. All factual allegations and any reasonable inferences must be construed in the light most favorable to the nonmoving party. *Price v. Bd. of Educ. of City of Chicago*, 755 F.3d 605, 607 (7th Cir. 2014).

## ANALYSIS

Techniplas alleges one cause of action in its complaint—breach of contact (verbal agreement). (Compl. ¶¶ 34–40.) To state a claim for breach of contract under Wisconsin law, the plaintiff must allege: (1) the existence of a valid contract; (2) that the defendant breached; and (3) damages flowing from that breach. *Matthews v. Wisconsin Energy Corp. Inc.*, 534 F.3d 547, 553 (7th Cir. 2008) (citing *Northwestern Motor Car, Inc. v. Pope*, 51 Wis. 2d 292, 296, 187 N.W.2d 200 (Wis. 1971)). The creation of a contract under Wisconsin law requires an offer, an acceptance, and consideration. *Skyrise Constr. Grp., LLC v. Annex Constr., LLC*, 956 F.3d 950, 956 (7th Cir. 2020). "'The existence of an offer and acceptance are mutual expression of assent, and consideration is evidence of the intent to be bound to the contract.'" *Id.* (quoting *NBZ, Inc. v. Pilarski*, 185 Wis. 2d 827, 520 N.W.2d 93, 96 (Wis. Ct. App. 1994)).

Techniplas argues that its complaint alleges a very simple and clear breach of contract:

- An offer – Knill's proposal to assist Techniplas after his employment ended to help the company manage the transition to a new CFO and maintain consistency of reporting and information as it emerged from bankruptcy. (Compl. ¶¶ 17–18, 35.)

4

- An acceptance – Techniplas purchased the company vehicle for $66,923.09 and placed the vehicle in Knill's name. (Compl. ¶¶ 19, 22–23, 35.)
- Consideration – In exchange for Knill's assistance, Techniplas would continue to make the monthly lease payments on Knill's company vehicle and consider purchasing the vehicle and placing it in Knill's name. (Compl. ¶¶ 19, 35.)
- A breach – Techniplas upheld its end of the bargain by purchasing the vehicle for Knill; whereas Knill breached the agreement by failing to provide the promised assistance to Techniplas. (Compl. ¶¶ 24–35.)
- Damages – Knill has refused to return the vehicle and Techniplas has suffered monetary loss due to the breach. (Compl. ¶¶ 33, 40.)

Knill, on the other hand, argues that Techniplas' complaint is not that simple. Knill asserts that the only allegation of breach of contract in Techniplas' complaint is Knill's unlawful recruitment of Mieska. (Def.'s Br. at 2–3, Docket # 6.) Knill argues that Techniplas' complaint, therefore, fails to state a claim because Knill never agreed to not solicit Techniplas' employees and even if he had, the agreement would be a restrictive covenant governed by Wis. Stat. § 103.465 and Techniplas failed to allege the requisite statutory elements. (*Id.* at 3–9.)

Techniplas concedes that Knill never agreed to refrain from soliciting Techniplas employees and asserts that it is not alleging a cause of action for breach of a restrictive covenant. (Pl.'s Br. at 8.) Rather, Techniplas argues that the complaint alleges that Knill agreed to provide assistance to Techniplas in exchange for the car, and Knill failed to provide said assistance. (*Id.*) Techniplas argues that the "allegations regarding Knill's solicitation of Chris Mieska merely answers the question – if he wasn't providing assistance

to Techniplas, what was Knill doing? In addition, by setting forth Knill's actual conduct during the assistance period, it prevents Knill from trying to claim he was removed by Techniplas before he was able to provide the assistance promised." (*Id.*)

The four corners of the complaint, however, do not reflect Techniplas' argument. The complaint specifically alleges as follows regarding Knill's breach of contract:

- Instead of providing assistance to Techniplas during the transition period, Knill used this time to solicit Techniplas employee Chris Mieska to leave Techniplas and join him at Neenah Enterprises, Inc. (Compl. ¶ 24.)

- Knill breached his obligations under the Agreement when he intentionally solicited and recruited Mieska during the period of assistance, knowing that rather than assisting Techniplas, said actions would significantly harm Techniplas and hinder its ability to successfully complete its emergence from bankruptcy and transition to a new CFO. (Compl. ¶ 38.)

- Knill's solicitation of Mieska was a blatant breach of the Agreement to assist Techniplas. (Compl. ¶ 32.)

Again, while Techniplas may argue that the alleged breach was not the recruitment of Mieska, its complaint says otherwise. Restrictive covenants, however, have their own, unique legal analysis. In Wisconsin, covenants not to compete are "prima facie suspect," and "must withstand close scrutiny to pass legal muster as being reasonable." *Am. Nat. Prop. & Cas. Co. v. Graham*, No. 04-C-1185, 2007 WL 777412, at *3 (E.D. Wis. Mar. 8, 2007) (citing *Wausau Medical Center v. Asplund*, 182 Wis. 2d 274, 281 (1994)). Five elements must be met for a covenant not to compete to be enforceable. The covenant must: (1) be necessary for the protection of the employer; (2) provide a reasonable time restriction; (3) provide a

reasonable territorial limit; (4) be reasonable as to the employee; and (5) be reasonable to the general public. *Id.* (citing *Asplund*, 182 Wis. 2d at 282).

The complaint alleges that Knill's offer to Techniplas was to provide assistance during the transition period to a new CFO, including maintaining consistency of reporting and information as Techniplas emerged from its bankruptcy process. (Compl. ¶ 18.) This is essentially an agreement to smooth the transition between CFOs, not a general agreement not to harm Techniplas. Perhaps Techniplas can allege facts that demonstrate that Knill failed to "assist Techniplas . . . [to] manage the transition to a new CFO and to maintain consistency of reporting and information as it emerged from the bankruptcy process" (Compl. ¶ 18), but the complaint, as it currently stands, fails to do so.

Techniplas also argues in its brief that Knill was unjustly enriched. (Pl.'s Br. at 9.) While there is nothing improper about pleading a breach of contract and alternatively pleading a cause of action for unjust enrichment, Techniplas alleges no such cause of action in its complaint. Techniplas cannot amend its complaint through its response brief. For these reasons, I find that Techniplas' complaint fails to state a claim. To the extent Techniplas alleges the parties had an oral contract in which Knill agreed to not solicit Techniplas employees, the complaint does not properly plead the existence of a restrictive covenant. However, to the extent Techniplas alleges that the parties had an oral contract in which Knill was to assist Techniplas in transitioning to a new CFO, the complaint contains no facts alleging Knill's breach. For these reasons, I find that Techniplas' complaint fails to state a claim and must be dismissed.

The Seventh Circuit instructs, however, that when a plaintiff's complaint is dismissed under Rule 12(b)(6), the general rule is to give at least one opportunity to amend the

complaint before the entire action is dismissed. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana,* 786 F.3d 510, 519 (7th Cir. 2015). The court has stated that unless "it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." *Id.* (emphasis in original). I do not find this to be one of the rare cases where futility is clear at the outset of the case. *See id.* at 520. For these reasons, Techniplas will be given leave to amend its complaint. Any amended complaint must be filed within fourteen (14) days of the date of this decision and order.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendant's motion to dismiss (Docket # 5) is **GRANTED**. The plaintiff's complaint is **DISMISSED WITHOUT PREJUDICE**. Any amended complaint must be filed within fourteen (14) days of the date of this decision and order.

Dated at Milwaukee, Wisconsin this 6th day of April, 2021.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge