UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**TECHNIPLAS US LLC,**

    Plaintiff,

  v.                                     Case No. 21-CV-159

**DAVID KNILL,**

    Defendant.

---

### DECISION AND ORDER ON DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

---

This case arises out of an alleged breach of an oral agreement between plaintiff Techniplas U.S., LLC and its former Chief Financial Officer, David Knill, to provide assistance to the company as it transitioned to a new CFO upon Knill's departure from the company. In its original complaint, Techniplas sued for breach of contract under the theory that Knill, rather than providing assistance to Techniplas as promised, impermissibly solicited Techniplas employee Chris Mieska to leave Techniplas and join Knill at Neenah Enterprises, Inc. Knill moved to dismiss Techniplas' complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The motion was granted, with leave to file an amended complaint. (Docket # 13.)

Techniplas filed its first amended complaint on April 16, 2021. (Docket # 14.) In the amended complaint, Techniplas sues Knill for breach of contract (verbal agreement), unjust enrichment, and breach of the duty of good faith and fair dealing. (*Id.*) Knill now moves to dismiss Techniplas' amended complaint for failure to state a claim. (Docket # 17.) For the reasons below, Knill's motion to dismiss is granted in part and denied in part.

# BACKGROUND

Techniplas is a global provider of highly engineered plastic components, primarily for the automotive sector as well as industrial, consumer, medical, and other markets. (First Am. Compl. ¶ 8, Docket # 14.) In August 2015, Techniplas hired Knill as its CFO. (*Id.* ¶ 10.) Knill's responsibilities included, but were not limited to, accountability for the administrative, financial, and risk management operations of Techniplas; development of a financial and operational strategy, metrics tied to that strategy, and the ongoing development and monitoring of control systems designed to preserve company assets; and reporting accurate financial results. (*Id.* ¶ 11.) Knill reported directly to the President of Techniplas. (*Id.*) As part of his employment, Techniplas provided Knill with a leased vehicle for his personal use, on which Techniplas made the monthly payments. (*Id.* ¶ 13.)

On May 7, 2020, Techniplas filed for Chapter 11 Bankruptcy. (*Id.* ¶ 14.) In June 2020, Knill submitted his resignation, with his final day of employment on July 15, 2020. (*Id.* ¶ 16.) After submitting his resignation, however, Knill contacted Techniplas' Chief Executive Officer with a proposal to provide assistance to Techniplas after his employment ended. (*Id.* ¶ 17.) The specific proposal Knill offered was to assist Techniplas after his employment ended in order to help the company manage the transition to a new CFO and to maintain consistency of reporting and information as it emerged from the bankruptcy process. (*Id.* ¶ 18.) In exchange for Knill's assistance, Techniplas agreed to continue to make the monthly lease payments on Knill's company vehicle through December 31, 2020, at which time, if Knill had provided the assistance promised, Techniplas would consider purchasing the vehicle and placing it in Knill's name. (*Id.* ¶ 19.)

Due to an internal communication error at Techniplas, rather than waiting until December 31, 2020, Techniplas purchased the company vehicle for $66,923.09 and placed the vehicle in Knill's name on July 30, 2020. (*Id.* ¶¶ 23–24.) Knill placed an "auto reply" on his email account on or about July 15, 2020 which informed external parties of his departure and that if they have any questions they should contact Steve Smith or Chris Mieska. (*Id.* ¶ 25.) Dean Nolden, Chief Financial Officer, had access to Knill's email account and monitored incoming and outgoing mail during the proposed period of "assistance." (*Id.* ¶ 26.) Knill sent 74 emails from his Techniplas account during the relevant time period and of those 74 emails, only 39 were related to Techniplas and none of them exhibited the "assistance" Knill agreed to provide. (*Id.* ¶¶ 27–31.) Knill did not perform any bank transactions during the relevant time period. (*Id.* ¶¶ 32–33.) Techniplas alleges that the only actions Knill took during the relevant time period consisted of signing legal documents for Board meetings and Bank Accounts, actions not falling under the "assistance" agreed to by the parties. (*Id.* ¶¶ 34, 36.) Knill did not engage in general discussions regarding tax, insurance and banking issues, intellectual property transfers, or other transactions for Techniplas. (*Id.* ¶ 35.) Thus, Techniplas alleges that Knill failed to provide the "assistance" he promised when entering into the verbal agreement with Techniplas, constituting a breach of the Agreement. (*Id.* ¶¶ 36–37.)

Techniplas further alleges that Knill's "true" intent in entering into the verbal agreement was to poach Techniplas' Consolidations Manager, Chris Mieska, a highly valuable employee essential to Techniplas' transition through bankruptcy. (*Id.* ¶¶ 38–43.) Upon learning of Knill's alleged breach of the verbal agreement, Techniplas demanded

return of the company vehicle on September 23, 2020. (*Id.* ¶ 44.) To date, Knill has refused to return the vehicle, causing damage to Techniplas. (*Id.* ¶¶ 44–45.)

## APPLICABLE RULE

Knill moves to dismiss Techniplas' first amended complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A short and plain statement "'gives[s] the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41 (1957)). In order to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

When determining the sufficiency of a complaint, the court should engage in a two-part analysis. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). First, the court must "accept the well-pleaded facts in the complaint as true" while separating out "legal conclusions and conclusory allegations merely reciting the elements of the claim." *Id.* (citing *Iqbal*, 556 U.S. at 680). Next, "[a]fter excising the allegations not entitled to the presumption [of truth], [the court must] determine whether the remaining factual allegations 'plausibly suggest an entitlement to relief.'" *Id.* (citing *Iqbal*, 556 U.S. at 681). As explained in *Iqbal*, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 556 U.S. at 679. All factual allegations and any reasonable inferences must

4

be construed in the light most favorable to the nonmoving party. *Price v. Bd. of Educ. of City of Chicago*, 755 F.3d 605, 607 (7th Cir. 2014).

## ANALYSIS

Techniplas alleges three causes of action in its complaint— breach of contract (verbal agreement), unjust enrichment, and breach of the duty of good faith and fair dealing. I will address each in turn.

### 1. Breach of Contract (Verbal Agreement)

Techniplas alleges that a verbal agreement existed between the parties and Knill breached said agreement. To state a claim for breach of contract under Wisconsin law, the plaintiff must allege: (1) the existence of a valid contract; (2) that the defendant breached; and (3) damages flowing from that breach. *Matthews v. Wisconsin Energy Corp. Inc.*, 534 F.3d 547, 553 (7th Cir. 2008) (citing *Northwestern Motor Car, Inc. v. Pope*, 51 Wis. 2d 292, 296, 187 N.W.2d 200 (Wis. 1971)). The creation of a contract under Wisconsin law requires an offer, an acceptance, and consideration. *Skyrise Constr. Grp., LLC v. Annex Constr., LLC*, 956 F.3d 950, 956 (7th Cir. 2020). "'The existence of an offer and acceptance are mutual expression of assent, and consideration is evidence of the intent to be bound to the contract.'" *Id.* (quoting *NBZ, Inc. v. Pilarski*, 185 Wis. 2d 827, 520 N.W.2d 93, 96 (Wis. Ct. App. 1994)).

Techniplas argues that its complaint alleges a simple breach of contract (Pl.'s Br. in Opp. at 14, Docket # 19.)

- An offer – Knill's proposal to assist Techniplas after his employment ended to help the company manage the transition to a new CFO and maintain consistency of reporting and information as it emerged from bankruptcy. (First Am. Compl. ¶¶ 17–18.)

- An acceptance – Techniplas purchased the company vehicle for $66,923.09 and placed the vehicle in Knill's name. (First Am. Compl. ¶¶ 19, 23–24.)
- Consideration – In exchange for Knill's assistance, Techniplas would continue to make the monthly lease payments on Knill's company vehicle and would purchase the vehicle and place it in Knill's name. (First Am. Compl ¶ 19.)
- A breach – Techniplas upheld its end of the bargain by purchasing the vehicle for Knill; whereas Knill breached the agreement by failing to provide the promised assistance to Techniplas. (First Am. Compl ¶¶ 25–37.)
- Damages – Knill has refused to return the vehicle and Techniplas has suffered monetary loss due to the breach. (First Am. Compl ¶¶ 44–45.)

Knill argues that Techniplas pleads itself out of court by alleging that Knill *did* perform the only assistance he agreed to provide. (Def.'s Br. at 5, Docket # 18.) Knill argues that the parties' oral agreement was that Knill would "assist Techniplas after [Knill's] employment in order to help [Techniplas] manage the transition to a new CFO and to maintain consistency of reporting and information as it emerged from the bankruptcy process." (First Am. Compl. ¶ 18.) He argues that Techniplas specifically pleads that Knill generated 39 business-related emails and signed legal documents for Techniplas—thus fulfilling his obligation under the oral agreement. (Def.'s Br. at 6, citing First Am. Compl. ¶¶ 28–29, 34.) Knill argues that this type of assistance is exactly the type of assistance one would expect to help Techniplas transition to a new CFO and to maintain consistency of reporting and information as it emerged from the bankruptcy process. (Def.'s Reply Br. at 4–5, Docket # 20.) Techniplas, on the other hand, argues that while Knill may have provided some "assistance" in the most general sense of the word, what he contracted to

provide was a specific type of assistance—i.e., helping Techniplas manage the transition to a new CFO and maintain consistency of reporting and information—and this he failed to do. (Pl.'s Resp. Br. at 7–8, Docket # 19.)

I find that Techniplas' first amended complaint sufficiently states a claim for breach of contract. Techniplas alleges that a valid verbal agreement exists, that Knill breached the agreement, and that Techniplas was damaged by the breach. The parties clearly dispute the meaning of an essential term of the agreement—what constituted the "assistance" Knill agreed to provide. Techniplas alleges and argues that drafting emails and signing papers was not the "assistance" the parties agreed to; whereas Knill argues that it was. This type of dispute—whether there was a meeting of the minds between the parties with respect to the essential terms of the agreement—is a question of fact. *Metso Mins. Indus., Inc. v. FLSmidth-Excel LLC*, 733 F. Supp. 2d 980, 989 (E.D. Wis. 2010) (quoting *Otradovec v. State of Wis. Real Estate Bd.*, 132 Wis.2d 476, 1986 WL 217286, *1 (Wis. Ct. App. 1986)). As such, I could not resolve the parties' dispute as to this material fact on summary judgment, much less on a motion to dismiss.

Thus, taking the facts pled as true, I find Techniplas' amended complaint sufficiently states a claim for breach of contract. Knill's motion to dismiss this claim is denied.

    2.    *Unjust Enrichment*

Techniplas alternatively alleges that Knill was unjustly enriched by the retention of the vehicle. In Wisconsin, an action for unjust enrichment, or quasi contract, is based upon proof of three elements: (1) a benefit conferred on the defendant by the plaintiff, (2) appreciation or knowledge by the defendant of the benefit, and (3) acceptance or retention of the benefit by the defendant under circumstances making it inequitable for the defendant

to retain the benefit. *Watts v. Watts*, 137 Wis. 2d 506, 531, 405 N.W.2d 303, 313 (1987). "In Wisconsin the quasi-contractual theories of quantum meruit and unjust enrichment are legal causes of action grounded in equitable principles and can be invoked only in the absence of an enforceable contract." *Carroll v. Stryker Corp.*, 658 F.3d 675, 682 (7th Cir. 2011) (emphasis added).

Knill argues that Techniplas' cause of action for unjust enrichment fails because there is no dispute that the oral agreement is a valid, enforceable contract. (Docket # 18 at 7.) There is nothing improper about pleading a breach of contract claim and alternatively pleading a cause of action for unjust enrichment. And, as stated above, there is a dispute over whether there was a meeting of the minds regarding an essential term of the contract. Thus, depending on how this conflict is resolved, the parties may or may not have an enforceable contract. The first amended complaint adequately pleads a cause of action for unjust enrichment and it would be premature at this stage to dismiss it. Knill's motion to dismiss this claim is denied.

    3.    *Breach of the Duty of Good Faith and Fair Dealing*

Finally, Techniplas alleges that Knill violated the duty of good faith and fair dealing inherent in every contract when Knill allegedly violated the agreement by failing to provide assistance and by entering into the agreement in bad faith (i.e., for the ulterior motive of persuading Mieska to leave Techniplas). (First Am. Compl. ¶¶ 59–65.)

A duty of good faith and fair dealing is an implied condition in every contract and imposes a duty of cooperation on the part of both parties and an obligation to act honestly. *Northgate Motors, Inc. v. General Motors Corp.*, 111 F. Supp. 2d 1071, 1082 (E.D. Wis. 2000). "However, the duty imposes a relatively limited obligation on the parties and is not a basis

for creating rights not expressly included in the contract." *Id.* Under Wisconsin law, a party seeking to show a breach of the duty of good faith and fair dealing "must show something that can support a conclusion that the party accused of bad faith has actually denied the benefit of the bargain originally intended by the parties." *Id.* (citations omitted).

Knill argues that Techniplas' claim is merely an attempt to revive the previously dismissed claim for breach of contract based on Knill's alleged solicitation of Mieska. (Docket # 9–10.) I agree. While Techniplas does re-allege that "Knill violated the express terms of the verbal agreement with El-Haj when he failed to provide the assistance promised," (First Am. Compl. ¶ 64), this is nothing more than an allegation of breach of contract. The bad faith Techniplas alleges revolves completely around Knill's alleged solicitation of "key employee" Mieska. (*Id.* ¶ 65.) As I previously found, Techniplas does not allege that Knill agreed to refrain from soliciting Techniplas employees as part of his verbal agreement. Again, the duty of good faith and fair dealing is not a basis for creating rights not included in the contract. For this reason, Knill's motion to dismiss this claim is granted and the cause of action is dismissed.

### ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendant's motion to dismiss (Docket # 17) is **GRANTED IN PART AND DENIED IN PART**. As to Counts I and II of the First Amended Complaint, the motion is denied. As to Count III of the First Amended Complaint, the motion is granted.

**IT IS FURTHER ORDERED** that the clerk of court will contact the parties to set a scheduling conference in this matter.

Dated at Milwaukee, Wisconsin this 2nd day of August, 2021.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge